*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————



UNITED STATES OF AMERICA,

        *Plaintiff–Appellee,*

     *v.*

KEVIN GRANT,

        *Defendant–Appellant.*

No. 07-3831

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 04-00161—Gregory L. Frost, District Judge.

Argued: March 3, 2010

Decided and Filed: January 11, 2011

Before: BATCHELDER, Chief Judge; KEITH, MERRITT, MARTIN, BOGGS,
MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK,
McKEAGUE, GRIFFIN, KETHLEDGE, and WHITE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Dennis Belli, Columbus, Ohio, for Appellant. Benjamin C. Glassman,
ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.
**ON BRIEF:** Dennis Belli, Columbus, Ohio, for Appellant. Benjamin C. Glassman,
ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Robyn Jones Hahnert,
Kevin Winters Kelley, ASSISTANT UNITED STATES ATTORNEYS, Columbus,
Ohio, for Appellee.

     GIBBONS, J., delivered the opinion of the court, in which BATCHELDER, C.J.,
MARTIN, BOGGS, GILMAN, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN,
and KETHLEDGE, JJ., joined. MERRITT, J. (p. 23), delivered a separate concurrence.
WHITE, J. (pp. 24–28), delivered a separate opinion concurring in part and dissenting
in part. CLAY, J. (pp. 29–37), delivered a separate dissenting opinion, in which KEITH,
MOORE, and COLE, JJ., joined.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.   Defendant–appellant Kevin Grant pled guilty to possession of a firearm, conspiracy to commit money laundering, and operation of a continuing criminal enterprise.  The district court sentenced Grant to twenty-five years in prison, the mandatory minimum sentence for those charges.  After Grant's sentence was affirmed by a panel of this court, the government filed a motion pursuant to Federal Rule of Criminal Procedure 35(b) to reduce his sentence based on his substantial assistance in the prosecution of others.  The district court granted the motion and reduced Grant's sentence to sixteen years.  Grant now appeals.  He claims first that the district court erred by not considering the 18 U.S.C. § 3553(a) factors when deciding the Rule 35(b) motion.  Second, Grant claims that the district court erred in its calculation under the United States Sentencing Guidelines during his original sentencing.  For the following reasons, we affirm.

I.

A.

In 2004, federal agents discovered via an authorized wiretap of Grant's cellular telephone that Grant headed a heroin distribution ring in the Columbus, Ohio, area.  Grant traveled to New York to obtain more than 100 grams of heroin at a time, which he then sold to users in the Columbus area.  Grant also "fronted" heroin to at least four distributors for sale to customers during his time in New York.  On August 27, 2004, a search warrant was executed at the home that Grant shared with Tia Holley, one of his distributors.  Agents seized 168.8 grams of heroin, a 9mm Luger pistol with ammunition, and $4,174 in cash.  A search of a separate apartment rented by Grant yielded multiple firearms and ammunition.  Grant also stored both heroin and money at the home of Tameka Hairston, the mother of one of his children.  Investigators determined that Holley assisted Grant in concealing the illegal source of his income by depositing over

$80,000 into her bank account and by submitting a false loan application to purchase a 2004 Lincoln Aviator. Grant also instructed Hairston to wire money from Columbus to an associate in New York in order to conceal the source of the funds.

Grant was indicted on September 23, 2004, for possession with intent to distribute heroin and knowing possession of a firearm in furtherance of a drug-trafficking crime. On January 13, 2005, the government filed a superseding indictment charging an additional eighty-four counts, including conspiracy to commit money laundering and operating a continuing criminal enterprise. Grant subsequently entered into a plea agreement with the government. Under the agreement, Grant agreed to plead guilty to counts 3, 7, and 89 of the superseding indictment in exchange for dismissal of the remaining counts. The parties agreed further that the quantity of heroin attributable to Grant was at least one kilogram but less than three kilograms and that Grant supervised at least five individuals in his heroin business.

On April 15, 2005, Grant pled guilty to the knowing possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), which carried a mandatory minimum sentence of five years in prison consecutive to any other sentence imposed; conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), which carried a maximum sentence of twenty years in prison; and operation of a continuing criminal enterprise in violation of 21 U.S.C. § 848, which carried a mandatory minimum sentence of twenty years in prison and a maximum sentence of life in prison. The mandatory minimum sentence, therefore, was twenty-five years in prison.

The Presentence Report ("PSR") first grouped the continuing criminal enterprise and money laundering counts by applying the offense level of the most serious count. *See* U.S.S.G. § 3D1.2(b) (2004). Operation of a continuing criminal enterprise carries a base offense level of 38, *see* U.S.S.G. § 2D1.5 (2004), but money laundering takes the offense level of the underlying crime, *see* U.S.S.G. § 2S1.1(a)(1) (2004). The PSR then determined that the underlying offense of the money laundering count was the continuing criminal enterprise, and thus the money laundering count carried a base offense level of 38 as well. The specific offense characteristics of money laundering

provide for a two-level increase if the defendant was convicted under 18 U.S.C. § 1956(h), giving Grant's money laundering count an adjusted offense level of 40. *See* U.S.S.G. § 2S1.1(b)(2)(B) (2004). Once grouped, therefore, Grant had an offense level of 40, which was then reduced three points to 37 for acceptance of responsibility. With a criminal history category of V, Grant's Guidelines range was 324 to 405 months imprisonment for the continuing criminal enterprise and money laundering counts, with any sentence for the firearm count to be served consecutively. The PSR recommended the minimum guideline sentence of 384 months, or thirty-two years, 324 months on the continuing criminal enterprise and money laundering counts followed by the 60 month mandatory minimum sentence on the firearm count.

Prior to sentencing, the government filed a request for a downward departure pursuant to U.S.S.G. § 5K1.1 (2004). The government explicitly did not request a departure under 18 U.S.C. § 3553(e); thus, the district court lacked the authority to impose a sentence below the statutory minimum. Rather, citing Grant's "excellent" cooperation to date, the government recommended the statutory minimum sentence of twenty-five years, seven years below the bottom end of the Guidelines range. The government indicated that Grant's cooperation was not yet complete and that, if he continued to testify truthfully, the government would file a motion pursuant to Rule 35(b) recommending a further reduction to sixteen years. At the sentencing hearing on October 6, 2005, Grant objected to the calculation of his offense level. The district court denied the objections, finding that the calculations in the PSR were correct. The district court then sentenced Grant to 300 months, or twenty-five years, in prison. On appeal, a panel of this court affirmed. *See United States v. Grant*, 214 F. App'x 518 (6th Cir. 2007). The panel declined to address Grant's argument that the district court improperly calculated his Guidelines range because any alleged errors were rendered harmless when the district court imposed the statutory minimum sentence. *Id.* at 520–21.

B.

On April 16, 2007, the government filed a request for a sentence reduction pursuant to Rule 35(b).  One effect of this motion was that the district court for the first time had the authority to impose a sentence below the statutory minimum.  *See* Fed. R. Crim. P. 35(b)(4).  The government indicated that Grant's cooperation was now "substantially complete" and he had "contributed to the resolution of the charges pending against the vast majority of his . . . fellow heroin distributors."  The government also noted that Grant testified for the prosecution in a state homicide trial.  The government therefore requested a nine-year sentence reduction to sixteen years, equal to half of the sentence originally recommended in the PSR.

Grant joined the motion and requested that his sentence be further reduced below sixteen years.  Grant argued that a further reduction was warranted because: (a) he provided substantial assistance in the prosecution of his co-conspirators; (b) his cooperation went beyond what was contemplated by the plea agreement because he testified for the state in an Ohio homicide prosecution carrying the death penalty; (c) the evidence that supported the firearm count under 18 U.S.C. § 924(c) could have been a two-level Guidelines enhancement rather than a separate conviction; (d) the scope of Grant's continuing criminal enterprise was smaller than many others; (e) a criminal history category of V overrepresented the seriousness of Grant's record; (f) the money laundering count should have been "subsumed" into the continuing criminal enterprise count; and (g) the mother of two of Grant's children had recently died from cancer, leaving the children without a natural parent available as a caregiver.

A hearing was held on the Rule 35(b) motion on April 27, 2007.  The court considered arguments as to whether any additional reduction was warranted by Grant's testimony in the state death penalty case but indicated that the remainder of Grant's arguments were not relevant at a Rule 35(b) hearing:

> The Court is not here today to talk in terms of resentencing and bringing up issues of the two-point enhancement instead of a five-year consecutive charge.  The Court is not here today to determine the scope and breadth of the CCE—that is, continuing criminal enterprise—that

was not as extensive as many CCEs and, therefore, a lesser sentence is warranted. The Court is not here to talk about or listen to whether the defendant's criminal history was overrepresented or whether the money laundering count should be subsumed within the CCE or the defendant's family background, at all. That has been resolved at previous hearings and, by my thinking, Mr. Grant, resolved in your favor considerably. I've got enough to do without redoing things that have been completed, much to the benefit of the defendant, but, Mr. Grant, I'm not going to hold this against you. All I'm going to say is, I am not going to listen to any arguments, now or ever, with regard to sentences that have been agreed upon and which have been imposed.

Transcript of Proceedings at 6–7, *United States v. Grant*, No. CR-2-04-161 (S.D. Ohio April 27, 2007). After the prosecution clarified that Grant had never actually agreed to the nine-year reduction and had always maintained his right to argue for a greater reduction, the court modified its position slightly, but still reiterated its complete rejection of five of Grant's seven arguments:

The issues that you're referring to are guideline issues and Section 3553(a) issues that the Court entertains at the time of sentencing, initially, not at the time of a Rule 35 motion. Now, if you want to argue that your assistance has been over and above what everyone defined as being substantial at the outset, then you can argue that, and that's a relevant argument, and I'm more than willing to listen to that. . . . But with regard to any guideline argument or any of the other issues that were brought up in the memorandum, I will not listen to.

*Id.* at 10–11. At the close of arguments, the district court granted the government's Rule 35(b) motion and reduced Grant's sentence to 192 months, or sixteen years. This timely appeal followed.

## II.

Before we reach the merits of Grant's arguments, we must address the government's argument that we lack jurisdiction to hear this appeal. Where the district court grants a Rule 35(b) motion, this court has no jurisdiction to review the extent of the downward departure for substantial assistance. *United States v. Moran*, 325 F.3d 790, 793 (6th Cir. 2003). However, exceptions created in 18 U.S.C. § 3742(a) provide us with jurisdiction to review a final sentence, including those imposed after a Rule

35(b) reduction. "[A] defendant may appeal an 'otherwise final sentence' if the sentence (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is greater than the sentence specified in the applicable guideline range; or (4) was imposed for an offense for which there is no guideline and is plainly unreasonable." *Id.* at 792 (quoting 18 U.S.C. § 3742(a)).

Although Grant is ultimately seeking a greater reduction to his sentence, on appeal he is arguing that the methodology the district court used to impose his sentence was in violation of the law. Specifically, Grant claims that the district court committed an error of law by misapprehending the factors it was allowed to consider in deciding the Rule 35(b) motion. Therefore, his appeal is subject to our jurisdiction under 18 U.S.C. § 3742(a)(1).[1] *See id.* at 794 ("[Section] 3742(a)(1) permits a defendant to appeal a final sentence that was imposed in violation of the law."); *United States v. Chapman*, 532 F.3d 625, 628 (7th Cir. 2008) (explaining that an assertion of a "methodological error alleges an error of law subject to our jurisdiction under section 3742(a)") (quotations omitted); *United States v. Doe*, 351 F.3d 929, 932 (9th Cir. 2003) (holding that an appellate court has jurisdiction under § 3742(a) to determine whether a district court can consider factors other than substantial assistance when resolving a Rule 35 motion); *United States v. Manella*, 86 F.3d 201, 203 (11th Cir. 1996) (same); *cf. United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (noting that this court has jurisdiction to review a decision where a district court misunderstood its discretion as a matter of law).

## III.

The core issue in this appeal is whether a district court may consider factors outside the value of the substantial assistance provided by a defendant in ruling on a Rule 35(b) motion to reduce his sentence and, if such factors may be considered, how they may affect the extent of the reduction.

---

[1]Based on the framing of the issues in the appellant's initial brief before the panel in this court, my view, expressed in dissent from the panel opinion, was that we lacked jurisdiction over that part of the appeal challenging the extent of the sentence reduction. That view changed, however, with the iteration of the issues for *en banc* review.

Based on differences between the texts of 18 U.S.C. § 3553(e) and Rule 35 resulting from amendment of the rule in 2002, Grant argues that a sentence reduction under Rule 35(b) is not limited solely to the value of the defendant's assistance. Rather, he contends that § 3553(a) factors may be used as a basis for reducing a sentence when a Rule 35(b) motion is made. Moreover, he says that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which mandates that district courts consider § 3553(a) factors when imposing a sentence, requires consideration of § 3553(a) factors at post-sentencing Rule 35(b) determinations. Finally, he insists that the procedural history of his case has denied him a full consideration of the § 3553(a) factors. He reasons that, because the district court could not depart below the statutory minimum at his original sentencing, the court should have been able to consider the § 3553(a) factors in connection with the Rule 35(b) motion.

We consider Grant's arguments in turn and reject them.

A.

We first look to the text of Rule 35(b) and give the words their plain and ordinary meaning at the time of their enactment. Where the language is plain, our "sole function . . . is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citation omitted). The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Where a plain reading "fails to produce a conclusive result, or where it leads to ambiguous or unreasonable results, a court may look to legislative history to interpret a statute." *Limited, Inc. v. Comm'r*, 286 F.3d 324, 332 (6th Cir. 2002).

As a general matter, Rule 35(b) is intended to "facilitate law enforcement by enabling the government to elicit valuable assistance from a criminal defendant . . . after he was sentenced . . . by asking the sentencing judge to reduce the defendant's sentence as compensation for the assistance that he provided." *United States v. Shelby*, 584 F.3d

743, 745 (7th Cir. 2009).  When the government files its motion within one year of

sentencing, Rule 35(b)(1) controls:

> (1) **In General.**  Upon the government's motion made within one year
> of sentencing, the court may reduce a sentence if:
>> (A) the defendant, after sentencing, provided substantial assistance in
>> investigating or prosecuting another person; and
>> (B) reducing the sentence accords with the Sentencing commission's
>> guidelines and policy statements.[2]

Fed. Rule Crim. P. 35(b)(1)(2006).

Subsection (b)(2), the subsection under which the government requested Grant's

reduction, then describes the circumstances under which a motion filed more than one

year after sentencing may be granted:

> (2) **Later Motion**.  Upon the government's motion made more than one
> year after sentencing, the court may reduce a sentence if the defendant's
> substantial assistance involved:
>> (A) information not known to the defendant until one
>> year or more after sentencing;
>> (B) information provided by the defendant to the
>> government within one year of sentencing, but which did
>> not become useful to the government until more than one
>> year after sentencing; or
>> (C) information the usefulness of which could not
>> reasonably have been anticipated by the defendant until
>> more than one year after sentencing and which was
>> promptly provided to the government after its usefulness
>> was reasonably apparent to the defendant.

Fed. R. Crim. P. 35(b)(2).

---

[2]The current version of Rule 35(b) is somewhat different from the version in effect at the time of Grant's sentencing.  After *Booker*, the Committee on Rules of Practice and Procedure deleted subsection (b)(1)(B), which limited the court's authority to reduce a sentence to situations where "reducing the sentence accords with the Sentencing commission's guidelines and policy statements."  Because *Booker* excised the statutory subsection that had made the Sentencing Guidelines mandatory, subsection (b)(1)(B) was similarly deleted "because it treat[ed] the guidelines as mandatory." Fed. R. Crim. P. 35(b), Advisory Committee on Criminal Rules's notes 2007 Amendments.

This change does not impact our analysis of this case, and the dissent inflates its significance by suggesting that the Advisory Committee's general explanatory language about the import of *Booker* somehow relates to Rule 35 in particular.  Among other reasons, this conclusion is unwarranted because the same language appears in the Advisory Committee's notes about the 2007 amendments to Federal Rule of Criminal Procedure 32.  The Committee was merely describing *Booker*, not suggesting an unstated change in Rule 35(b).

The text of the rule does not tell us whether it authorizes district courts to look to § 3553(a) factors in deciding the extent of a sentence reduction. Subpart (b)(1)(A) could be read to permit a downward adjustment only on the basis of the defendant's substantial assistance, as it is the only part of the rule that provides a justification for a reduction.[3] On the other hand, the rule does not expressly forbid consideration of other factors, and, at the time Grant was given his post-sentence reduction, subpart (b)(1)(B) required that the "Sentencing Commission's guidelines and policy statements" be considered before granting any reduction. Based purely on a reading of the text, we cannot conclude that consideration of the § 3553(a) factors is prohibited, permitted, or required.

We can, however, glean some guidance from the context of the rule, including its title. The title of Rule 35(b), "Reducing a Sentence for Substantial Assistance," undermines Grant's position in that it specifies that the defendant's substantial assistance forms the impetus for the court's ability to reduce an already-final sentence. Although the title of a rule or statute is not as critical to our analysis as the text itself, the Supreme Court previously has looked to titles to aid its analysis. For example, in *Begay v. United States*, the Court was faced with the question of whether driving under the influence qualified as a "violent felony" under the Armed Career Criminal Act ("ACCA"). 553 U.S. 137, 139 (2008). In support of its holding that a DUI was not a violent felony, the Court observed that the title of ACCA suggested that the Act focused on a "special danger" created by guns such that it was not enough that a crime presented a "potential risk of physical injury," as the dissent argued. *Id.* at 146–47. When considered in conjunction with other indicators, the title of the statute led the Court to hold that a DUI is not a "violent felony." Similarly, in this case, the title explains that courts are able to reduce a defendant's sentence *for* his substantial assistance.[4]

---

[3] Furthermore, subsection (b)(2) specifies that the district court "may" grant a sentence reduction "if the defendant's substantial assistance involved" certain factors. Fed. R. Crim. P. 35(b)(2). And subsection (b)(3) allows the district court to consider presentence cooperation "[i]n evaluating" a defendant's "substantial assistance." Fed. R. Crim. P. 35(b)(3).

[4] In addition, the title of Rule 43(b)(4) describes a Rule 35 proceeding as a "Sentence Correction" and dictates that a defendant need not be present for such a "correction or reduction of sentence" proceeding. Fed. R. Crim. P. 43(b)(4).

Subsection (b)(3) provides further context. It instructs courts that a defendant's presentence assistance may be taken into consideration when evaluating whether a defendant has provided substantial assistance. Although this does not exclude the possibility that other factors could be considered when deciding the magnitude of the reduction, it is instructive that the rule specified only a method of evaluating assistance and omitted any reference to consideration of other factors anywhere in the rule. Therefore, although a plain reading of the text of the rule is ambiguous, an examination of the context of Rule 35(b) as a whole strongly suggests that the district court acted within its discretion in examining only the value of Grant's assistance.[5]

B.

Grant argues that Rule 35(b)'s focus on reductions for substantial assistance was altered by the 2002 amendments to the rule, so that the rule now permits consideration of § 3553(a) factors in determining the extent of a reduction. In order to evaluate this argument, we turn to the legislative history and Rule 35's amendment history. Rule 35(b)'s authorization of substantial-assistance-based sentence reductions was enacted by Congress as part of the Sentencing Reform Act of 1984. The amendment, which was not to take effect until November 1, 1987, read:

> Correction of Sentence for Changed Circumstances. The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, to the extent that such assistance is a factor in applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a).

---

[5]We note also that Rule 35 is a specific exception to the general rule that a sentence may not be subsequently modified. 18 U.S.C. § 3582(c)(1)(B). Congress provided that a district court may modify a sentence "to the extent otherwise expressly permitted . . . by Rule 35 . . . ." *Id.* If Rule 35 allowed a full-scale resentencing, then it would have made little sense for Congress to have limited the modification to "the extent" "expressly" provided because § 3553(a) would permit the district court to resentence a defendant to any procedurally and substantively reasonable term. *Cf. Gall v. United States*, 552 U.S. 38, 51 (2007). Again the statutory context indicates that Rule 35 must expressly define the "extent" of a modification in a more limited fashion than Grant surmises.

Sentencing Reform Act of 1984, Pub. L. No. 98-473, § 215, 98 Stat. 2016.   The Sentencing Reform Act also created 18 U.S.C. § 3582, which allowed for post-sentencing modification of a sentence in certain defined situations:

> Modification of an Imposed Term of Imprisonment.  The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>
> ...
>
> > (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

18 U.S.C. § 3582(c)(1)(B).

The authority to depart below mandatory minimum sentences was not given to district courts until the Anti-Drug Abuse Act of 1986, which further amended Rule 35 before the effective date of the 1984 amendments.  As amended, the new Rule 35(b) provided:

> Correction of Sentence for Changed Circumstances.  The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.  The court's authority to lower a sentence under this subdivision includes the authority to lower such sentence to a level below that established by statute as a minimum sentence.

Anti-Drug Abuse Act of 1986, Pub L. No. 99-570, § 1009, 100 Stat. 3207-8.  The same Act also created § 3553(e), which permits the imposition of an initial sentence below a statutory minimum upon the defendant's substantial assistance and the government's motion.  The statute provides:

> (e) Limited authority to impose a sentence below a statutory minimum.  Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum

sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1007, 100 Stat. 3207-7 (codified at 18 U.S.C. § 3553(e)).

At the time they went into effect, Rule 35(b) and 18 U.S.C. § 3553(e) were essentially identical, except that § 3553(e) applied at original sentencings and Rule 35(b) applied to post-sentence reduction motions. They each provided a limited circumstance in which a defendant, by providing substantial assistance, could obtain a reduction of his sentence below a mandatory minimum. The critical language in each, from Grant's perspective, was that the reduction in the sentence was to be given "*to reflect* a defendant's subsequent, substantial assistance." Fed. R. Crim. P. 35(b) (1987) (emphasis added).[6] Because both rules were passed and took effect contemporaneously, both permitted a district court to sentence below a mandatory minimum, and both constituted express exceptions to the finality-of-sentence rule in § 3582(c)(1)(B), the two are often interpreted consistently, along with their Guidelines counterpart, U.S.S.G. § 5K1.1.[7] *See, e.g.*, *United States v. Monus*, 20 F. App'x 511, 512 n.1 (6th Cir. 2001) ("A motion under § 3553(e) is the pre-sentence equivalent of a Rule 35(b) motion."); *United States v. Marks*, 244 F.3d 971, 973 n.1 (8th Cir. 2001) (collecting cases and stating, "In analyzing the application of Rule 35(b), we rely . . . upon cases decided under § 5K1.1 . . . and 18 U.S.C. § 3553(e) . . . ."); *United States v. Perez*, 955 F.2d 34, 35 (10th Cir. 1992) (applying the requirement that the government file a motion under § 5K1.1 before a court has jurisdiction to consider a reduction pursuant to motions under Rule 35(b));

---

[6]The language in § 3553(e) is identical save for the word "subsequent." This reflects the timing differences between the rule and the statute; while § 3553(e) rewarded a defendant's pre-sentencing cooperation, Rule 35(b) applied to post-sentencing assistance.

[7]Section 5K1.1 itself does not permit a reduction below a mandatory minimum, although it is often accompanied by a motion under § 3553(e), which does permit such a reduction.

*United States v. Doe*, 940 F.2d 199, 203 n.7 (7th Cir. 1991) ("Rule 35(b) and § 3553(e) must be read consistently with their Sentencing Guidelines counterpart, § 5K1.1.").

We have rejected the notion that factors not related to cooperation may be considered in connection with a § 3553(e) motion. In *United States v. Bullard*, the defendant argued that the district court erred by not considering facts regarding his family background and the effects of incarceration on his children (submitted as part of his sentencing memorandum) when determining the extent of the departure below a mandatory minimum pursuant to the government's motion under § 3553(e). 390 F.3d 413, 414–15 (6th Cir. 2004). We rejected the argument, finding that "[o]ur case law confirms the limited ability for downward departures," which "must be based *solely* upon the 'substantial assistance' rendered by the defendant." *Id.* at 416 (quoting *United States v. Snelling*, 961 F.2d 93, 97 (6th Cir. 1991)) (quotation marks omitted). Moreover, "only factors relating to a defendant's cooperation may influence the *extent* of a departure pursuant to § 3553(e)." *Id.* (quoting *United States v. Winston*, 198 F.3d 248, 1999 WL 993925, at *3 (6th Cir. Oct. 20, 1999) (unpublished table decision)) (quotation marks omitted). This conclusion is consistent with the views of other circuits that have addressed the issue.[8]

Section 3553(e) has remained unchanged since its enactment, while Rule 35(b) has undergone various revisions under the authority of the Judicial Conference Committee on Rules of Practice and Procedure.[9] In 2002, the committee modified Rule

---

[8] *See United States v. Ahlers*, 305 F.3d 54, 62 (1st Cir. 2002); *United States v. Williams*, 551 F.3d 182, 186–87 (2d Cir. 2009); *United States v. Hood*, 556 F.3d 226, 234 n.2 (4th Cir. 2009); *United States v. Desselle*, 450 F.3d 179 (5th Cir. 2006); *United States v. Thomas (Thomas II)*, 11 F.3d 732, 737 (7th Cir. 1993); *United States v. Jackson*, 577 F.3d 1032, 1036 (9th Cir. 2009); *United States v. A.B.*, 529 F.3d 1275, 1281–82 (10th Cir. 2008); *United States v. Mangaroo*, 504 F.3d 1350, 1356 (11th Cir. 2007); *In re Sealed Case*, 449 F.3d 118, 125 (D.C. Cir. 2006).

[9] Before a Federal Rule of Criminal Procedure can be amended, it must go through a seven-step rulemaking process. After a proposed change to the rule is reviewed and drafted by the appropriate Advisory Committee, the amendment is subject to public notice and comment. The comments are considered and incorporated, and approval is needed from both the Advisory Committee and the Committee on Rules of Practice and Procedure. The full Judicial Conference must also approve the final rule, which is then subject to final approval by the Supreme Court. If accepted, the rule takes effect after Congress has been given at least seven months to reject, modify, or defer it. *See generally* A Summary for the Bench and Bar, Federal Rules of Practice and Procedure, *available at* http://www.uscourts.gov/RulesAndPolicies/FederalRulemaking/RulemakingProcess/SummaryBenchBar.aspx.

35 "as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. 35(b) Advisory Committee on Criminal Rules's notes 2002 amendments. The committee also made a substantive amendment to the rule that extended the time during which a Rule 35(b) reduction could be requested. *Id.* The new version of the rule, quoted above, allowed courts to reduce defendants' sentences should they provide substantial assistance, but no longer specified that the reduction "reflect" that assistance. This change was not thought by the advisory committee to be substantive and does not necessarily operate in a substantive way, and accordingly we treat the change as "stylistic" only. *Id.*

In *United States v. Poland*, the First Circuit recognized the obvious tension between the amendment's deletion of the rule's "to reflect" language and the advisory committee's assertion that the change was purely stylistic. 562 F.3d 35, 39 (1st Cir. 2009). The district court read the excised language back into the rule in an attempt to avoid a Rules Enabling Act conflict, *see* 28 U.S.C. § 2072(b), and the First Circuit affirmed, although on different grounds.[10] The clear parallels in the histories of Rule 35(b) and § 3553(e) led the court to believe that "Congress doubtless intended" that "reductions for substantial assistance below the statutory minimum—whether at initial sentencing or on sentence reduction—[be] governed by the same standards." *Id.* at 40. Therefore, the court reasoned that even if the "to reflect" language had never been included in Rule 35(b), "the courts would still have considered the two enactments *in para materia*, there being no obvious reason why Congress would want the reflects limitation to apply in one context but not in the other." *Id.* The district court properly refused to grant a reduction greater than what was warranted by the defendant's assistance because "Congress has never changed the statutory rule that [Rule 35(b)] reductions must reflect only the assistance provided," nor has it shown "any desire to

---

[10]Like the First Circuit, we decline to reach the issue of whether the amendment of Rule 35(b), if read as Grant advocates, would violate the Rules Enabling Act.

create a discrepancy for post-sentence adjustments below the mandatory minimum." *Id.* at 41.

At most, the 2002 amendment injected a bit of ambiguity into the text of Rule 35(b). The amendment does not speak to consideration of the § 3553(a) factors. The amendment does not change the purpose of Rule 35(b) or require a departure from the longstanding practice of interpreting the rule in lockstep with § 3553(e) and § 5K1.1. Upon reading the text of the rule in conjunction with its history and broader statutory context, we resolve the ambiguity against Grant's favored interpretation of the amended rule and conclude that Rule 35(b) permits reductions based on substantial assistance rather than other factors.

## C.

Grant also argues that, even if Rule 35(b) does not address whether the court may consider § 3553(a) factors, *Booker* requires consideration of them when a court resentences pursuant to a Rule 35(b) motion. Initially, we note that the Sixth Amendment right to trial by jury, the topic of concern in *Booker*, has no application to a Rule 35(b) motion. The *Booker* discussion of a district court's consideration of § 3553(a) factors occurs in the context of the Court's explanation of sentencing procedures to be utilized in an advisory guideline regime. As *Booker* and post-*Booker* precedents have clarified, the procedural and substantive requirements attendant to original sentencings are not mandatory in other contexts. *See Booker*, 543 U.S. at 258 (listing statutory provisions unaffected by the Court's holding); *see also United States v. Washington*, 584 F.3d 693, 700–01 (6th Cir. 2009); *United States v. Johnson*, 356 F. App'x 785, 790–92 (6th Cir. 2009) (concluding that *Booker* did not affect supervised-release-revocation proceedings). Most importantly, in *United States v. Dillon*, 130 S. Ct. 2683, 2693 (2010), the Supreme Court held that *Booker* does not apply to sentence reductions under 18 U.S.C. § 3582(c)(2), a context closely analogous to Rule 35(b) reductions. Significantly, the Court analogized § 3582(c)(2) proceedings to Rule 35(b) proceedings and described both as "congressional act[s] of lenity" that do not entail "plenary" resentencings. *Id.* at 2691–92. Finally, we note that Grant's brief cites no

authority for its bold assertion that consideration of the § 3553(a) factors is now required when a district court considers a Rule 35(b) motion for reduction of sentence. We reject the argument that a district court must consider § 3553(a) factors in connection with a Rule 35(b) motion. *See also United States v. Bowers*, 615 F.3d 715, 728 (6th Cir. 2010) ("[A] defendant's allegation of *Booker* unreasonableness in a Rule 35(b) proceeding . . . is not a cognizable 'violation of law' appealable under [18 U.S.C.] § 3742(a).").

D.

Finally, Grant suggests that the procedural posture of his case requires that the § 3553(a) factors be considered in connection with the government's Rule 35(b) motion. The basis for this argument is Grant's assertion that, because he was originally sentenced to the mandatory minimum sentence, he was deprived of consideration of the § 3553(a) factors at that time. Therefore, he posits, consideration of the § 3553(a) factors is required now that the government's Rule 35(b) motion has removed the barrier of the mandatory minimum sentence.

This argument is problematic. Whether Grant's original sentencing hearing included full consideration of § 3553(a) factors is immaterial to his original sentence. The district court gave him the lowest possible legal sentence. And application of § 3553(a) is not constitutionally required. The provision thus has no status beyond that which it is given by statute or rule in a given context. Courts routinely sentence defendants according to mandatory minimums and do so without reference to the § 3553(a) factors because the relevant statutes restrict their discretion. *See United States v. Penney*, 576 F.3d 297, 317 (6th Cir. 2009) ("[Section] 3553(a) factors do not apply to congressionally mandated sentences.") (citation omitted). Thus, our conclusion that Rule 35(b) does not require or authorize consideration of § 3553(a) factors effectively forecloses Grant's argument.

IV.

Our conclusion that the § 3553(a) factors have no role in Rule 35(b) proceedings does not affect the methods by which district courts have traditionally determined the value of a defendant's substantial assistance. These methods are not only governed by the language of the rule and governing statutes, but they also take into account the practicalities of the context.

When faced with a Rule 35(b) motion, the district court must initially decide whether the defendant did in fact render substantial assistance. If he did not, the motion is denied. The explicit language of the rule permits relief only "if" there has been substantial assistance. If, however, the court determines that the defendant did provide substantial assistance within the meaning of the rule, then the rule gives the district court ample discretion. The granting of the motion is discretionary, as is the extent of any reduction given. The government may recommend a particular reduction, but the district court need not follow the recommendation. The district court is free to give a lesser or greater reduction than any recommendation. The value of the substantial assistance is the governing principle in this exercise of discretion, and the reduction may not exceed the value of the assistance.

The role that we have outlined for district courts in the resolution of a Rule 35(b) motion does not impose any obligation to conduct a new *Booker* resentencing, and we have not modified the nature of a Rule 35(b) hearing. Our limitation of Rule 35(b) rulings to a determination of the value of substantial assistance does not eliminate the traditionally broad discretion that district courts exercise in valuing the assistance.

Determining the extent to which a sentence should be reduced would, as a matter of course, include consideration of the defendant's activities on behalf of the government and how much his assistance helped in the investigation or prosecution of another. But the extent of the reduction might be tempered by other factors affecting the valuation. The district judge might wish to consider the context surrounding the initial sentence in valuing the assistance. For example, a district court might recognize that a defendant's assistance is of extremely high value but also recognize that fully valuing the

cooperation would give the defendant a sentence much lower than co-defendants who were far less culpable. Giving a lesser reduction under these circumstances might well be warranted. Similarly, if the defendant was among the least culpable in a multi-defendant case, his extremely valuable assistance could be fully rewarded. Another typical situation involves consideration of a defendant's capacity for abiding by the law. A defendant whose prior criminal activity is non-existent or not too serious could be fully rewarded for his valuable assistance, while the valuable cooperation of a defendant who is a threat to society might not be rewarded quite so highly. And, finally, a district judge might properly consider a sentence below a certain point inappropriate for a defendant convicted of a heinous crime, and thus value his cooperation less, while the equivalent cooperation of a defendant who is not a threat to society could be fully valued. These sorts of contextual considerations have traditionally been considered by district courts in determining the value of cooperation and the extent of any reduction under § 3553(e) and § 5K1.1.

The appropriate balancing of the determinative factors tied to a defendant's substantial assistance is within the sound discretion of the district court and often arises from the specific context of each case. Assigning a number of years or months in prison to a defendant's cooperation is not a task that can be carried out with mathematical certainty. One district judge might decline to consider the contextual factors we mention; another might deem them useful. The choice is that of the district court. Contrary to the fears of the dissent about district court "confusion," district judges are fully capable of weighing the contextual factors we mention, as appropriate, and ultimately arriving at a conclusion as to the extent of any reduction.

One unfortunate consequence of accepting Grant's arguments would have been creating unwarranted sentencing disparities between defendants, like Grant, whose cooperation with the government occurs at least in part after sentencing and those who, by happenstance, complete their cooperation before sentencing. Under Grant's scenario, defendants in his situation would receive full consideration of § 3553(a) factors in connection with a reduction below a mandatory minimum, while those sentenced

pursuant to a motion under § 3553(e) would not.  *See Bullard*, 390 F.3d at 417.  The result we reach maintains congruity between the pre-sentence and post-sentence contexts.

The practical implications of this decision are quite similar to those of our sister circuits.  *Cf. Shelby*, 584 F.3d at 748 ("[T]he judge must reserve the right to condition the grant of a Rule 35(b) motion, in whole or in part, on its consistency with the statutory sentencing factors, in order to make sure that the reduced sentence is not unjust.  But there is no comparable reason for the judge to reexamine the entire sentence under section 3553(a)." (citations omitted)); *Poland*, 562 F.3d at 41 (holding that Rule 35(b) "reductions must reflect only the assistance provided"); *Doe*, 351 F.3d at 932–33 (holding that the § 3553(a) factors may be considered, but only for the limited purposes of reducing the size of the sentence reduction); *Manella*, 86 F.3d at 204–05 (same).  Although there is an obvious overlap between some of the factors we view as appropriate aspects of valuing the assistance given and the § 3553(a) factors, mingling the terminology of § 3553(a) with the concept of valuation of assistance evokes a *Booker*-type proceeding, which does not reflect the purpose of Rule 35(b) or the ways that district courts have traditionally evaluated a defendant's substantial assistance.  Moreover, a focus on § 3553(a) as a starting point for analysis clouds the analytical exercise that the district court must undertake, which is to determine whether the defendant is entitled to a reduction for substantial assistance and, if he is, the extent of the reduction.  *Cf. Bullard*, 390 F.3d at 417.

V.

Having decided the core issue in this case, we briefly dispose of Grant's argument that his Guidelines range was improperly calculated by the district court at his original sentencing hearing.  We recognize that there is uncertainty as to whether it is appropriate to consider the district court's original Guidelines calculation in reviewing an issue arising from a subsequent Rule 35(b) proceeding.  *See Dillon*, 130 S. Ct. at 2694.  We decline to resolve that issue here because we may quickly conclude that the district court correctly calculated Grant's Guidelines range.  The proper calculation of

a defendant's Guidelines range is one facet of the procedural reasonableness for which we review a defendant's sentence. *Gall*, 552 U.S. at 51. "In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (citing *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007)).

The district court used continuing criminal enterprise as the underlying crime for the money laundering count. Grant argues that the district court instead should have found his trafficking of heroin to be the underlying crime for his money laundering count, resulting in an adjusted offense level of 34. Under Grant's scenario, when the counts were grouped, the continuing criminal enterprise count would then have carried the higher offense level, and Grant would have been left with a total offense level of 35, two points lower than the offense level utilized by the district court. Grant claims that this calculation is important because the government's recommended sentence reduction was intended to leave Grant with a sentence half the length of his minimum exposure at sentencing.

Heroin trafficking qualifies as one element of the crime of operation of a continuing criminal enterprise. *See* 21 U.S.C. § 848(c); *United States v. Long*, 190 F.3d 471, 474–75 (6th Cir. 1999). Thus, any trafficking proceeds that Grant laundered or caused Holley and Hairston to launder were also proceeds of the continuing criminal enterprise. Considering the additional fact that Grant did not plead guilty to heroin trafficking, the district court did not err by using the continuing criminal enterprise as the underlying offense of the money laundering count. We find no fault with the district court's choice of the higher offense level for money laundering rather than the offense level for a continuing criminal enterprise.[11]

---

[11] Grant's reliance on application note 2 of U.S.S.G. § 3D1.3 (2004) is misplaced because the counts being grouped in this case are distinct crimes with separate Guidelines provisions that "involv[e] substantially the same harm" and "transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.3 (2004).

VI.

We therefore reject Grant's argument that the resolution of a Rule 35(b) motion requires full *Booker*-type consideration of the § 3553(a) factors. The district court acted properly in refusing to consider Grant's § 3553(a)-based arguments.[12] Because we also find that the district court properly calculated Grant's Guidelines range, we affirm Grant's sentence.

---

[12]The district court may have mistakenly believed that it could not disregard the government's recommendation and give a lesser reduction. If that is indeed the case, its error was harmless. It is obvious from the record that any reduction given would have been smaller, had the court not accepted the government's recommendation.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring.  While insisting that in re-sentencing for substantial assistance a court need not reconsider all of the § 3553(a) factors that need to be considered at the original sentencing, our Court's opinion in the instant case states that the sentencing judge may consider a wide variety of sentences, including "consistency with the statutory sentencing factors, in order to make sure that the reduced sentence is not unjust."  The Court goes on to say that the district judge might wish to consider the "context" that determined the initial sentence in valuing the assistance, as well as taking into account "a consideration of a defendant's capacity for abiding by the law."  The Court makes it clear that the sentencing court may weigh "these sorts of contextual considerations after initially being considered by a district court in determining the value of cooperation and the extent of any reduction under § 3553(e) and § 5K1.1."

I concur in the court's disposition of this case because it gives the district court wide discretion to go above or below the government's recommendation in substantial assistance cases.  I believe this wide discretion gives the district court room in its reconsideration of the sentence to do justice in the case and avoid a sentencing process in which the prosecutor rather than a neutral magistrate controls the sentence.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

HELENE N. WHITE, Circuit Judge, concurring and dissenting.  The question is whether in allowing for departure from mandatory minimum sentences for defendants whose substantial assistance is recognized by the government, Congress intended that the sentencing court be restricted to consideration of only the assistance given, foreclosing consideration of other unrelated circumstances or characteristics of the offense or the defendant.

### I

The majority concludes that consideration of other factors is permissible only in evaluating whether the defendant should receive the full sentence reduction that would otherwise correspond to the assistance.  As conceded by the majority, Fed. R. Crim. P. 35(b) in its current form signals no intent to restrict the court's consideration to the value or circumstances of the assistance.  Nevertheless, a parallel provision, 18 U.S.C. § 3553(e),[1] has been widely interpreted to circumscribe the sentencing court's authority, allowing consideration of only those matters relevant to valuing the assistance.  Additionally, prior iterations of Rule 35(b), like its parallel provision, included language authorizing departure "to reflect a defendant's subsequent, substantial assistance."

Congressional authority to sentence below the statutory minimum in cases of substantial assistance comes from 28 U.S.C. § 994, which states:

> **(n)** The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be

---

[1]18 U.S.C. § 3553(e) provides:

**Limited authority to impose a sentence below a statutory minimum**.--Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.  Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

However, neither the Guidelines nor the policy statements explicitly address sentence reductions under Rule 35(b).

This history is amply discussed by the majority and dissent. I find nothing in that history that compels either answer to the question presented. Unlike the majority, I find no guidance in Rule 35(b)'s title, or in subsection (b)(3). Regarding the title of the rule, in either case, the reduction is given "for substantial assistance." And, subsection (b)(3)'s authorization to consider prior assistance, without mentioning other § 3553(a) factors, makes sense in the context that taking into account prior assistance is authorized in considering whether there has been substantial assistance justifying application of Rule 35(b), not in determining the appropriate sentence reduction. It does not shed light on the issue presented.

Thus, up to this point in the analysis, I see no compelling argument for either interpretation of Rule 35(b).

Nevertheless, because I am not convinced that Congress intended one rule to apply to motions under § 3553(e) and a different rule to apply to motions under Rule 35(b), and given the history of the various amendments to Rule 35(b) I cannot agree with the dissent's conclusion that the amendments changed the permissible considerations in ruling on a Rule 35(b) motion, I agree with the majority that the consistent interpretation of § 3553(e) to permit only consideration of the value of the assistance, and preclude consideration of other factors unrelated to the assistance, dictates our decision in this case. *See United States v. Bullard*, 390 F.3d 413 (6th Cir. 2004), and cases cited therein. Thus, I concur with the majority's conclusion that in resentencing under Rule 35(b), the court's task is simply to grant a reduction to reflect the defendant's substantial assistance.

In this regard, I join in Judge Merritt's and the dissent's interpretation of the majority decision to permit a consideration of a broad range of factors, including § 3553(a) factors and others, as long as they are relevant to determining what sentence reduction appropriately reflects the defendant's substantial assistance. This determination need not be made in a vacuum; the court is permitted to craft its own calculus, as long as it is intended to arrive at a sentence reduction that reflects the defendant's substantial assistance and is not otherwise contrary to law.

## II

Although I concur in the majority's legal conclusion, I dissent from the majority's application of that conclusion to this case. I would remand for resentencing on the basis that some of the additional arguments Grant sought to advance were arguably relevant in determining the value of his assistance and the appropriate sentence reduction.

On appeal, Grant argues that the government's position

> overlooks the fact that its own motion for downward departure and motion for a Rule 35(b) sentence reduction *both* used the original guideline sentencing range (as calculated by the probation officer) as the "starting point" for recommending a sentence reduction of 50% of the bottom end of that range. Its current position that "the original sentencing range should not be a consideration" is inconsistent with the position it advocated in the district court.

[Def.'s Final Reply Br. at 7. Citations to record omitted, emphasis in original.] Because the statutory mandatory minimum rendered the "starting point" irrelevant in the initial sentencing proceeding and appeal, Grant argues, the "starting point" must be considered as part of the Rule 35(b) proceeding. The panel opinion acknowledged this argument.[2]

---

[2] Footnote 2 of the panel majority opinion states:

Grant also argues that the prosecution and the District Court sought to reduce his sentence to a number equal to half of his original Guidelines range, but that errors in the initial sentencing calculation resulted in a higher "starting point," and hence a higher post-reduction sentence than what he would have received absent legal error. We conclude that his Guidelines range was calculated correctly, though, thus rendering moot the question of whether any such alleged error could be the basis for reversal.

Grant's argument in this regard finds support in the record. The government's initial sentencing memorandum explained:

> By statute, the defendant faces a mandatory minimum sentence of at least twenty-five years in prison. 21 U.S.C. § 848 and 18 U.S.C. § 924(c). This motion for reduction has been made solely pursuant to U.S.S.G. § 5K1.1 and not under 18 U.S.C. § 3553(e). Thus, the twenty-five year mandatory sentence by statute still applies.

. . . .

> ### Conclusion
>
> In the opinion of government counsel and the investigating agents, Kevin Grant's cooperation, to date, warrants a seven year reduction in sentence at this time. Under the advisory sentencing guideline range applicable in his case, a seven year reduction would require a three offense-level reduction to an offense level 34, criminal history category V (235 to 293 months in prison).
>
> Based upon the defendant's cooperation to date, the United States recommends a sentence of 25 years in prison at this time. We believe such a sentence takes into account all of the relevant sentencing factors outline in 18 U.S.C. §3553(a),[3] as well as his cooperation to date.
>
> If the defendant continues to cooperate with authorities and testifies truthfully, if necessary, at trials of individuals about whom he has evidence of their criminal activities, the United States will consider filing a motion, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, requesting a further reduction in sentence. Provided the defendant meets all of his commitments, once his cooperation is completed, the United States will recommend a total sentence of 16 years in prison (an additional reduction of nine years). Such a recommendation

---

The majority opinion does not elaborate on that conclusion. And, as noted by the *en banc* majority, the panel addressing Grant's initial appeal declined to address the scoring issues because any alleged errors were rendered harmless by the statutory mandatory minimum sentence. *United States v. Grant*, 214 F. App'x 518, 520-21 (6th Cir. 2007).

[3] The government's reference to and reliance on the 18 U.S.C. § 3553(a) factors is consistent with my experience, albeit limited, on the court. In a significant number of cases involving sentencing proceedings in the context of § 3553(e) motions, the court and the government make reference to and consider 18 U.S.C. § 3553(a) factors. Logically, under *United States v. Bullard*, 390 F.3d 413 (6th Cir. 2004), a sentencing court should not mention or refer to 18 U.S.C. § 3553(a) until after determining the value of the assistance, and then only in considering whether to depart from the mandatory minimum to the full extent of the value of the assistance. Nevertheless, although the government in such cases does not concede that recalculation of the Guidelines is appropriate, it often either initiates or acquiesces in consideration of § 3553(a) factors prior to a determination of the value of the assistance.

would result in a 50% reduction in the sentence recommended under the advisory guidelines (384 to 402 months in prison).

Consistent with its earlier position, the governments's Rule 35(b) motion sought a reduced sentence of 16 years:

> In the opinion of government counsel and the investigating agents, Kevin Grant's cooperation, to date, warrants a reduction in sentence from 25 to 16 years in prison. This would be a 50% reduction from the original advisory guideline range applicable to the facts underlying his conviction. We believe such a sentence takes into account all of the relevant sentencing factors outlined in 18 U.S. C. § 3553(a), as well as the defendant's cooperation.[4]

It is not clear whether there was, in fact, an understanding that Grant would ultimately receive a sentence equal to one-half of the otherwise applicable Guidelines minimum. And, clearly, if there had been such an understanding, it would not have been binding on the court. Nevertheless, the Guidelines themselves make the government's estimation of the value of the assistance a relevant consideration, and if the government had at one point valued the assistance as worth a reduction to one-half of the otherwise applicable Guidelines sentence, that fact had potential relevance to the Rule 35(b) proceeding, and the court was permitted, if not required, to consider the argument.

I would remand for resentencing within the framework announced by the majority, with instructions to consider Grant's arguments as they may be relevant to determining a sentence that appropriately reflects his substantial assistance.

---

[4]The original panel majority observed this inconsistency in the government's position. *United States v. Grant,* 567 F.3d 776, 781 (6th Cir. 2009).

—————————

## **DISSENT**

—————————

CLAY, Circuit Judge, dissenting, joined by KEITH, MOORE and COLE, Circuit Judges.  In an apparent attempt to craft a tacit compromise, the *en banc* majority and concurring opinions shift their focus away from Petitioner and instead create an unmanageable legal standard.  Because the district court erroneously concluded that it may not consider the factors enumerated in 18 U.S.C. § 3553(a) on a Rule 35(b) motion, this Court should vacate the district court's decision and remand for reconsideration.[1] Without deciding whether the district court was *required* to consider § 3553(a), it is clear, as the panel majority found, that a district court is not *prohibited* from doing so. In finding that it was prohibited from doing so, the district court committed legal error. I therefore respectfully dissent.

As a preliminary matter, it is apparent that the standard announced by the majority will lead to unnecessary confusion.[2]  In her dissent to the now vacated panel majority decision, Judge Gibbons opined that "substantial assistance" should be the only factor guiding a departure below a mandatory minimum under Rule 35(b). *See United States v. Grant*, 567 F.3d 776, 785 (6th Cir. 2009) (Gibbons, J., dissenting).  Yet, in a departure of her own, Judge Gibbons' *en banc* majority opinion would authorize district courts to consider myriad factors in this regard—so long as the courts do not acknowledge that the factors emanate from § 3553(a).

---

[1] The district court, the parties, and the majority assume, perhaps erroneously, that each of the factors advanced by Petitioner before the district court fall within the scope of § 3553(a). For purposes of this dissent, that assumption is not disturbed. But to the extent Petitioner's arguments fall outside the scope of § 3553(a), the district court, in its discretion, must consider whether it is appropriate to apply those additional factors as well for the reasons stated herein.

[2] The majority focuses on the word "confusion" to misstate the dissent's argument.  Contrary to the majority's view, no fair reading of this dissent suggests that district judges are not "capable of weighing the contextual factors" discussed by the majority. (Maj. Op. at 19.)  Rather, confusion is likely to arise because the majority's opinion, given its internal inconsistences and ambiguities, fails to adequately instruct district courts on the proper standard to apply.  The dissent does not doubt the ability of district judges to *apply* the proper legal standard had the majority announced a clear standard to apply.

District courts are instructed by the majority opinion, on the one hand, that Rule 35(b) "does not require or authorize consideration of § 3553(a) factors," yet, on the other, that district courts may "take into account the practicalities of the context" in valuing the defendant's substantial assistance. (*See* Maj. Op. at 18.) Many of the factors discussed by the majority—including the nature of the offense and the defendant's capacity to abide by the law—are not dissimilar from the factors enumerated in § 3553(a). District courts will have to struggle to sort out the internal inconsistencies and ambiguities of the majority opinion, and this Court may be required to revisit the issue again in the near future.

The difficulties with the majority opinion are compounded by the ambiguous nature of its holding. It is unclear whether the majority would hold that the district court properly exercised its discretion in not considering § 3553(a) (*see* Maj. Op. at 22 ("The district court acted properly in refusing to consider Grant's § 3553(a)-based arguments.")), or whether the majority would hold that the district court lacked discretion to do so in any event (*see id.* at 16 ("[We] conclude that Rule 35(b) permits reductions based on substantial assistance rather than other factors.").) The majority misses the point by focusing on Petitioner's argument that the district court was *required* to consider the § 3553(a) factors. This dissent does not embrace Petitioner's argument in that regard, but rather contends that the district court had the discretion to consider additional factors. In this case, the district court erred in concluding that it did not have discretion to do so.

The lack of clarity in the majority's opinion is perhaps best exemplified by the majority's apparent misapplication of its own standard. Whatever the precise nature of the majority's holding, the majority at a minimum makes clear that a district court *may*, in its discretion, consider additional factors to value a defendant's substantial assistance. (*See* Maj. Op. § IV.) In this case, the district court "[would] not listen to" Petitioner's arguments about, for instance, his criminal history and the circumstances of his underlying conviction, reasoning that these issues are "not [entertained] at the time of a Rule 35 motion." (Tr. at 6-7.) Curiously, the majority finds no error in the district

court's ruling, even though the majority holds that a district court may "consider the context surrounding the initial sentence in valuing the assistance." (*See* Maj. Op. at 18.) The district court plainly failed to consider whether it *would* do so, instead committing legal error by concluding that it *could not* do so.

### A.      District Court's Discretion on Resentencing Under Rule 35(b)

The majority's erroneous disposition of this case is grounded in a misinterpretation of Rule 35(b). The plain language of the Rule does not restrict a district court from exercising its discretion to consider various factors in determining a proper sentencing reduction under Rule 35(b). That a district court may consider the § 3553(a) factors specifically, is supported by recent amendments to the Rules and, perhaps, the express language of § 3553(a). It is also supported by the congressional purpose of providing for the imposition of a just sentence, which is particularly compelling in a case such as this where Petitioner was initially sentenced to a mandatory minimum that divested the district court of authority to consider the § 3553(a) factors in the first instance.

> Turning to the text of Rule 35(b), it provides in pertinent part, as follows:
>
> **(1) In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.
>
> **(2) Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved [certain information which became known or useful after one year as detailed by Rule 35(b)(2)].

Fed. R. Crim. P. 35(b)(1), (2). Under the plain language of the Rule, a district court presented with a Rule 35(b) motion first must consider whether the defendant has provided "substantial assistance," and if so, to what extent the defendant's sentence should be reduced. Rule 35(b) is silent regarding the factors a district court may consider in reducing a sentence. *See* Fed. R. Crim. P. 35(b); *United States v. Park*, 533

F. Supp. 2d 474, 476-77 (S.D.N.Y. 2008). *Cf.* U.S.S.G. § 5K1.1 (providing factors to guide courts in reducing guideline range for substantial assistance prior to sentencing).

Prior to the 2002 amendments to the Rules, former Rule 35(b) provided that the court may reduce a sentence "*to reflect* a defendant's subsequent, substantial assistance." Fed. R. Crim. P. 35(b)(2) (2001) (emphasis added). Many courts have relied on the phrase "to reflect" to hold that factors other than substantial assistance may not be considered on a Rule 35(b) motion. *See, e.g.*, *United States v. Chavarria-Herrara*, 15 F.3d 1033, 1037 (11th Cir. 1994) ("The plain language of Rule 35(b) indicates that the reduction shall reflect the assistance of the defendant; it does not mention any other factor that may be considered."). The 2002 amendments to the Rules, however, removed this phrasing, leaving the Rule to provide for a sentencing reduction "*if* the defendant's substantial assistance" was of a certain kind. *See* Fed. R. Crim. P. 35(b)(2) (emphasis added).

This change in the plain language of the Rule is significant. Whereas the word "reflect" suggests the latter taking into account the former, the word "if" denotes merely a condition precedent.[3] Under the current language, once a defendant provides certain substantial assistance— and thus satisfies the condition precedent—the district court may reduce the defendant's sentence. Nowhere does the Rule limit a district court's discretion to consider additional pertinent factors, nor does the Rule provide that the reduced sentence must "reflect" or be otherwise limited by the value of the defendant's substantial assistance—though this would certainly be an important factor. *See, e.g.*, *United States v. Garcia*, 215 F. App'x 948, 949-51 (11th Cir. 2007).

As the majority points out, the Advisory Committee on Criminal Rules ("Advisory Committee") did not intend the 2002 amendments to change the meaning of the Rules. The Advisory Committee reported that many of the changes were part of a "general restyling of the Criminal Rules to make them more easily understood." Fed.

---

[3]The majority does not disagree. (*See* Maj. Op. at 18 ("When faced with a Rule 35(b) motion, the district court must initially decide whether the defendant did in fact render substantial assistance. If he did not, the motion is denied. The explicit language of the [R]ule permits relief only 'if' there has been substantial assistance.").)

R. Crim. P. 35—advisory committee notes.  To the extent this language was persuasive at the time of the amendments, *cf. Till v. SCS Credit Corp.*, 541 U.S. 465, 489 (2004) (rejecting a statutory interpretation based on purported congressional intent in part because it "ignor[ed] the plain language of the statute . . . ."), however, its persuasive value has been diminished by subsequent amendments to the Rules.

The majority overlooks the significance of 2007 amendments to the Rules and the accompanying Advisory Committee notes.  One such amendment eliminated Rule 35(b)(1)(B), which formerly read as follows:

> Upon the government's motion made within one year after sentencing, the court may reduce a sentence if:
>
> (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and
>
> *(B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements.*

Fed. R. Crim. P. 35(b)(1)(A), (B) (2006) (emphasis added).  The Advisory Committee eliminated subsection (B) to conform the Rule to *United States v. Booker*, 543 U.S. 220 (2005).  In its notes accompanying Rule 35, the Advisory Committee, citing 28 U.S.C. § 3553(a), explained that *Booker* permits a court to tailor a sentence "in light of other statutory concerns as well."  Fed. R. Crim. P. 35—advisory committee notes.  This discussion, in the context of Rule 35(b), supports the view that the elimination of Rule 35(b)(1)(B) was intended to prevent limiting the district court's consideration to only substantial assistance.  It also suggests that the Advisory Committee contemplated that a district court may apply the § 3553(a) factors in the context of a Rule 35(b) motion.[4]

---

[4] The majority makes the baffling assertion that the dissent "inflates" the significance of the amendments to the Rules following *Booker*. (Maj. Op. at 9 n.2.)  Yet the majority does not endeavor to analyze the persuasive value of the 2007 Amendments, and the majority thereby *itself* inflates the dissent's reliance on the 2007 Amendments.  Not only is the significance of the 2007 Amendments collateral to the dissent's preferred disposition of this case, but the majority completely writes off any value of the 2007 Amendments to Rule 35 on the basis that the same advisory committee language also accompanies amendments to Rule 32.  Although this seemingly repetitive commentary may show that these notes are not unique to Rule 35, the notes nonetheless do accompany Rule 35 and suggest that the drafters anticipated consideration of numerous factors on a Rule 35(b) motion.

That the application of Rule 35(b) permits consideration of the § 3553(a) factors comports with the congressional purpose of providing a just sentence, particularly in a case such as this where Petitioner was not sentenced above the mandatory minimum. *See* 18 U.S.C. § 3553(a). Petitioner was initially sentenced to the lowest available sentence, a mandatory minimum of 25 years. Since a statute divested the district court of any authority to consider a sentence less than 25 years, the district court did not—and could not—look to the § 3553(a) factors.

Now that Rule 35(b) has pierced the mandatory minimum, there is no reason why Petitioner should be deprived of the district court's consideration of the § 3553(a) factors to guide its discretion and arrive at an appropriate sentence.[5] The posture of the Rule 35(b) re-sentencing in this case—where Petitioner was initially sentenced to a mandatory minimum—is not materially different from most initial sentencings. The district court in both instances would have discretion over the sentences, and neither defendant would yet have had the § 3553(a) factors applied. In this case, the mandatory minimum sentence precluded the district court from considering the § 3553(a) factors at Petitioner's initial sentencing, but no consideration of fairness or consistency supports precluding their application now that the district court's discretion has been restored through Rule 35(b). *Cf. United States v. Lee*, 288 F. App'x 264, 269 (6th Cir. 2008) ("A district court's failure to consider the § 3553(a) factors would result in a procedurally unreasonable sentencing determination, potentially requiring the Circuit to vacate and remand for resentencing.").

In fact, although ignored by the majority, application of the § 3553(a) factors might well constitute a statutory right of a defendant in connection with a Rule 35(b) re-sentencing. Section 3553(a) states that a sentencing court "shall" consider certain statutory factors. To the extent a Rule 35(b) sentencing reduction constitutes a "sentence" within the meaning of § 3553(a), a court would be required to consider § 3553(a). *See, e.g.*, *United States v. Moran*, 325 F.3d 790, 792 (6th Cir. 2003) (holding,

---

[5]In somewhat cryptic language, the majority acknowledges that Rule 35(b) "gives the district court ample discretion." (Maj. Op. at 18.)

in another context, that a "district court's reduction of [defendant's] sentence under Rule 35(b) is a 'sentence.'").

Although we have held that district courts may consider only the extent of a defendant's cooperation on a pre-sentence motion for a downward departure under 18 U.S.C. § 3553(e), *see United States v. Bullard*, 390 F.3d 413, 416-17 (6th Cir. 2004), this limitation is grounded in factors enumerated in the Sentencing Guidelines, U.S.S.G. § 5K1.1, upon which *Bullard* relies in part.  No such factors are present with respect to Rule 35(b).  Furthermore, *Bullard* and the cases it cites as authority were decided at a time when the Sentencing Guidelines were mandatory, and, notably, § 3553(e) requires the reduced sentence "to reflect" the defendant's substantial assistance, phrasing that was excised from Rule 35(b).

Contrary to the position taken by the majority, the district court had the discretion to consider the § 3553(a) factors in the context of a Rule 35(b) motion.  Whether the district court was *required* to do so is a question for another day.  Because the district court categorically refused to consider Petitioner's timely arguments on the Rule 35(b) motion in his case, this Court should vacate the decision of the district court and remand for reconsideration.

### B.     Timeliness of Petitioner's Arguments

In this case, following the government's Rule 35(b) motion, Petitioner filed the following reasons in support of his arguments for a larger reduction than the government had requested: "(1) he had provided more substantial assistance than had been contemplated by the initial plea deal; (2) his firearm conviction could have been a two-point sentencing enhancement, rather than a separate charge with a five-year mandatory minimum sentence; (3) the scope and breadth of his continuing criminal enterprise was less extensive than most such enterprises; (4) his criminal history category overrepresented his actual criminal history; (5) his money laundering conviction should have been subsumed within his continuing criminal enterprise conviction; and (6) the mother of two of his children had recently died, depriving them of a natural parent while he is incarcerated." *Grant*, 567 F.3d at 776.

At the hearing on the government's Rule 35(b) motion, the district court rejected all but Petitioner's first argument:

> The Court is not here today to talk in terms of resentencing and bringing up issues of the two-point enhancement instead of a five-year consecutive charge. The Court is not here today to determine the scope and breadth of the . . . continuing criminal enterprise that was not as extensive as many [such enterprises] and, therefore, a lesser sentence is warranted. The Court is not here to talk about or listen to whether the defendant's criminal history was overrepresented or whether the money laundering count should be subsumed within the [continuing criminal enterprise] or the defendant's family background, at all . . . . All I'm going to say is, I am not going to listen to any arguments, now or ever, with regard to sentences that have been agreed upon and which have been imposed.

(Tr. at 6-7.) The government responded that Petitioner had maintained his right to argue for a greater reduction. The district court then stated as follows:

> The issues that you're referring to are guideline issues and Section 3553(a) issues that the Court entertains at the time of sentencing, initially, not at the time of a Rule 35 motion. Now, if you want to argue that your assistance has been over and above what everyone defined as being substantial at the outset, then you can argue that, and that's a relevant argument, and I'm more than willing to listen to that . . . . But with regard to any guideline argument or any of the other issues that were brought up in the memorandum, I will not listen to.

(*Id.* at 10-11.)

As the transcript of the proceedings before the district court makes clear, the court summarily dismissed five of Petitioner's six arguments as untimely. This was error, inasmuch as the district court had the discretion to hear the balance of Petitioner's arguments. Since the district court erroneously found that it *could not*—rather than *would not*—consider these arguments, the decision should be vacated and the case remanded to the district court for reconsideration. *See, e.g.*, *United States v. Chapman*, 532 F.3d 625, 629 (7th Cir. 2008) (upholding district court's consideration of prior criminal histories and the seriousness of offenses in the context of a Rule 35(b) motion).

**C.      Conclusion**

The proper disposition of this case would consist of this Court vacating the decision of the district court and remanding the case for reconsideration.  On remand, the district court should be instructed to consider, in its discretion, whether it is appropriate to apply the § 3553(a) factors, and to the extent Petitioner's arguments do not fit within that statutory section (*see supra* note 1), whether it is appropriate to consider Petitioner's additional arguments for a sentencing reduction as well.

For the reasons stated above, I respectfully dissent.